FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2012 DEC -6 PM 2: 17

CLERK_____
SO. DIST. OF GA.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Case No.** |
| | ) | |
| | ) | **INDICTMENT** |
| v. | ) | |
| | ) | **Violation: CR 2 1 2 - 0 2 4** |
| | ) | |
| **AVETIK MOSKOVIAN,** | ) | **18 U.S.C. § 1956(h)** |
| aka "AVO" | ) | **Money Laundering** |
| | ) | **Conspiracy** |
| | ) | |
| **Defendant.** | ) | **18 U.S.C. § 2** |
| | ) | **Aiding and Abetting** |

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment:

1. **GENERAL ALLEGATIONS - INTRODUCTION**

    1.    Defendant **AVETIK MOSKOVIAN aka "AVO"**, resided in and around

Los Angeles, California, and controlled the following fictitious companies, among

others, each of which was purportedly located at various addresses in and around Los

Angeles, California: Design Accessories, T.H., also known as Design Accessories; Hass

Jewelry; Grand Prix Detail; and Gagis Diamonds, also known as G's Diamonds.

    2.    Brunswick Medical Supply, Inc. ("Brunswick Medical"), located at 1603

Gloucester Street, Brunswick, Glynn County, Georgia, purported to be a supplier of

durable medical equipment ("DME"), which included, among other things, ankle braces,

knee braces, back braces and other orthotic and prosthetic devices.

    3.    MEDICARE was a federal healthcare benefit program which funds certain

healthcare services provided to patients who were elderly, blind or disabled. Medicare

was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal

agency of the United States Department of Health and Human Services.  Medicare was a

"healthcare benefit program" as defined in Title 18, United States Code, Section 24(b).

    4.    Medicare paid for various healthcare services provided to Medicare

beneficiaries, including payments for DME provided to Medicare beneficiaries, but only

if the health care services were medically necessary and were ordered by a licensed

medical doctor or other qualified health care provider.

    5.    In order to submit bills to Medicare for reimbursement for healthcare

services provided to Medicare beneficiaries, a DME supplier, medical clinic or clinical

laboratory had to be an approved Medicare provider.  To become an approved Medicare

provider, the DME supplier, medical clinic or clinical laboratory had to submit an

application to CMS.  If the applicant met certain minimum qualifications, Medicare

approved the application.  The applicant was then issued a unique identification number

called a "provider number."

    6.    Once the applicant was issued a provider number, it could then submit

bills, known as "claims," to Medicare to obtain reimbursement for health care services

provided to Medicare beneficiaries.  Claims to Medicare were typically submitted

electronically, and required certain critical information, including:  (a) the Medicare

beneficiary's name and identification number, (b) a description of the health care services

provided or supplied to the Medicare beneficiary; (c) the billing codes for the health care

services; (d) the date upon which the health care services were provided; and (e) the

name and provider number of the referring physician that prescribed or ordered the health

care services.

    7.    When a claim for reimbursement was submitted to Medicare, the provider

2

certified that (a) the contents of the claim were true, correct, and complete; (b) the form was prepared in compliance with the laws and regulations governing the Medicare program; and (c) the health care services provided were medically necessary and were in fact provided as billed.

8.      Medicare paid claims for reimbursement submitted by Medicare providers by (a) mailing a paper check made payable to the Medicare provider to the address of the Medicare provider; or (b) electronically depositing money in a bank account held in the name of the Medicare provider, a process known as electronic fund transfers (EFT).

9.      From in or about 2007 and continuing through in or around December 2008, various coconspirators associated with Brunswick Medical engaged in a scheme to defraud Medicare in which they falsely billed Medicare for more than $5 million in phony claims, for which Brunswick Medical was paid more than $1 million.

10.     Once Medicare paid Brunswick Medical for these phony claims, Defendant **AVETIK MOSKOVIAN aka "AVO",** aided and abetted by others both known and unknown to the grand jury, conducted numerous financial transactions with the proceeds of the fraud at Brunswick Medical, knowing that this money was generated through unlawful activity, and designed to conceal its nature, location, source, ownership, and control.

## COUNT ONE
## MONEY LAUNDERING CONSPIRACY
### 18 U.S.C. § 1956(h)

11.     The allegations of paragraphs 1 through 10 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

12.     From in or about 2007 and continuing through in or around December

3

2008, in the Southern District of Georgia, the Central District of California, and elsewhere, Defendant **AVETIK MOSKOVIAN aka "AVO"**, aided and abetted by others both known and unknown to the grand jury, did knowingly combine, conspire, and agree with other persons known and unknown to the Grand Jury, to commit offenses against the United States, to wit, to violate Title 18, United States Code, Section 1956(a)(1)(B)(i).

13.     It was a part and object of the conspiracy that Defendant **AVETIK MOSKOVIAN aka "AVO"**, aided and abetted by others both known and unknown to the grand jury, would knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, to wit, health care fraud, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All done in violation of Title 18, United States Code, Sections 1956(h) and 2..

## FORFEITURE ALLEGATIONS

14.     The allegations of paragraphs 1 through 13 of the Indictment are incorporated by reference as if fully set forth herein for the purpose of alleging forfeitures to the United States of America pursuant to Title 18 United States Code, Sections 982(a)(1) and (7).

4

15.     Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of the offenses in violation of Title 18, United States Code, Section 1956 set forth in Count Ten, Defendant **AVETIK MOSKOVIAN, aka "AVO",** shall forfeit to the United States of America any property, real or personal, involved in such offenses, or any property traceable to such property.

16.     If any of the property, as a result of any act or omission of the Defendant:

          a.      cannot be located upon the exercise of due diligence;

          b.      has been transferred or sold to, or deposited with, a third party;

          c.      has been placed beyond the jurisdiction of the court;

          d.      has been substantially diminished in value; or

          e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A True Bill.



Foreperson

5

Edward J. Tarver
United States Attorney

James D. Durham
First Assistant United States Attorney

Brian T. Rafferty**
Assistant United States Attorney
Criminal Division Chief

**Designates Lead Counsel

6